UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
CHRISHA CREATIONS, LTD.,

                    Plaintiff,              OPINION

        -against-
                                            08 Civ. 1065 (MGC)

DOLGENCORP, INC., DOLLAR GENERAL
CORPORATION, AND FAMILY DOLLAR
STORES, INC.,

                    Defendants.

---------------------------------X

APPEARANCES:

        EDWARDS ANGELL PALMER & DODGE, LLP
        Attorneys for Plaintiff
        750 Lexington Avenue
        New York, New York 10022

        BY: Peter C. Schechter, Esq.
            Jennifer L. Dereka, Esq.


        KUDMAN TRACHTEN ALOE LLP
        Attorneys for Defendants
        350 Fifth Avenue
        Suite 4400
        New York, New York 10118

        BY: Thomas M. Furth, Esq.
            Alisa Silverstein, Esq.

Cedarbaum, J.

Chrisha Creations, Ltd. sues Dolgencorp., Inc., Dollar General Corp., and Family Dollar Stores, Inc. for infringing U.S. Patents Nos. 7,302,769 ("the '769 patent") and 7,216,446 ("the '446 Patent"). Because the parties do not agree on the correct construction of certain terms used in the claims of the '769 patent, I held a hearing in accordance with Markman v. Westview Instruments, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

## BACKGROUND

The parties market and sell cold-air inflatable displays, often used for seasonal lawn decoration, advertising, and event attraction. A cold-air inflatable display is made from a permeable fabric skin and inflated by a continuously blowing fan. Because the air blown into the display escapes through the fabric at the same rate as the new air supplied from the fan enters, the display maintains its shape without any need for a frame.

The invention claimed in the '769 patent is the fan assembly that inflates these displays. According to the background section in the '769 patent, prior displays relied on fan assemblies which are permanently affixed to the fabric.

2

Since the fan assembly in those displays is a permanent component, a consumer who wished to purchase multiple displays was required to buy multiple fan assemblies. Yet not every purchaser of multiple displays has a need for multiple fan assemblies. Many such purchasers exhibit only one seasonally appropriate display at a time, such as a Santa Claus around Christmas and an Uncle Sam around Independence Day. The permanent affixation of the fan assembly to the fabric prevents those consumers from buying a single fan that can be used in a number of displays. The '769 patent claims a fan assembly that solves this problem. According to the patent specification, that fan assembly is "interchangeable" between different displays, which eliminates the need to buy a new fan assembly with every new display.

On December 4, 2007, the U.S. Patent and Trademark Office ("PTO") issued the '769 patent, entitled "Interchangeable Fan Assembly for Cold-Air Inflatable Displays," to inventor William Machala. Machala subsequently assigned the '769 patent to plaintiff Chrisha Creations. The '769 patent contains three independent claims (claims 1, 6, and 12) and ten dependent claims (claims 2, 3, 4, 5, 7, 8, 9, 10, 11, and 13). Plaintiff alleges that defendants' device infringes claim 6 of the '769 patent, in which the inventor describes his invention as a cold-

air inflatable display comprising a permeable fabric, an interchangeable fan assembly, and a lighting arrangement.

"Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute." Pall Corp. v. Hemasure Inc., 181 F.3d 1305, 1308 (Fed. Cir. 1999). Plaintiff alleges that defendants market and sell cold-air inflatable displays in which the fan assembly is attached to the display's fabric skin via a single-use cable tie. The cable tie is threaded through a sheath in the display's fabric and is then pulled taut around a groove in the housing that encases the fan. This procedure secures the fan to the fabric. Once fastened, the cable tie cannot be loosened. As a result, in order to transfer a fan between displays using the accused device, one must cut through the cable tie securing the fan to the first display and use a new cable tie to secure it to the second display.

The parties disagree about the meaning of claim 6's language, which is discussed below.

**DISCUSSION**

**I.   Canons of Claim Construction**

The first step of a patent infringement analysis is determining the meaning and scope of the patent claims alleged to have been infringed.  <u>Markman</u>, 52 F.3d at 976.  This step, commonly called claim construction, is an issue of law exclusively for the court.  <u>Id.</u> at 970-71.  Its purpose is to "elaborat[e] the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  <u>DeMarini Sports, Inc. v. Worth, Inc.</u>, 239 F.3d 1314, 1322 (Fed. Cir. 2001).  A court should construe "only those [claim] terms . . . that are in controversy, and only to the extent necessary to resolve the controversy."  <u>McNeil-PPC, Inc. v. Perrigo Co.</u>, 443 F. Supp. 2d 492, 501 (S.D.N.Y. 2006) (alterations in original) (quoting <u>Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999)).

Interpretation of the asserted claims begins with a review of the intrinsic evidence.  Intrinsic evidence includes the claim language, the written description that precedes the claims in the patent specification, and, if in evidence, the prosecution history.  <u>DeMarini Sports</u>, 239 F.3d at 1323.  "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."  <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

<u>Claim language</u>

The Patent Act requires a patent applicant to conclude a patent specification "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, para. 2.  Those claims "define the invention to which the patentee is entitled the right to exclude."  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Accordingly, claim construction begins with the words of the claims themselves.  <u>Vitronics</u>, 90 F.3d at 1582.  A claim's terms are to be construed as would "a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application," understand them.  <u>Phillips,</u> 415 F.3d at 1313.

<u>Written description</u>

Although the claims define the scope of the invention, they do not stand alone.  Rather, "they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims.  For that reason, claims must be read in view of the specification, of which they are a part."  <u>Id.</u> at 1315 (internal citations and quotation marks omitted).  By statute, a specification must provide "a written description of the invention, and of the manner and

process of making and using it, in such full, clear, concise,
and exact terms as to enable any person skilled in the art to
which it pertains, or with which it is most nearly connected, to
make and use the same, and shall set forth the best mode
contemplated by the inventor of carrying out his invention." 35
U.S.C. § 112, para. 1.  This written description generally
consists of an abstract of the invention, a description of the
invention's background, a summary of the invention, patent
drawings, and a detailed description that discusses preferred
embodiments of the invention.  See Inv. Tech. Group, Inc. v.
Liquidnet Holdings, Inc., Nos. 07 Civ. 510 & 07 Civ. 6886, 2010
WL 199912, at *3 (S.D.N.Y. Jan. 19, 2010).

      Although the written description is always important for
claim construction, the Federal Circuit has stressed the need to
be wary of importing limitations from the written description
into a claim that is not so limited on its face.  Phillips, 415
F.3d at 1323.  In particular, it has cautioned that claims are
not necessarily confined to the specific embodiments presented
in the written description.  Id.  In assessing "whether a person
of skill in the art would understand the embodiments to define
the outer limits of the claim term or merely to be exemplary in
nature," a court should be mindful that:

          [o]ne of the best ways to teach a person of ordinary
          skill in the art how to make and use the invention is
          to provide an example of how to practice the invention

in a particular case.  Much of the time, upon reading
the specification in that context, it will become
clear whether the patentee is setting out specific
examples of the invention to accomplish those goals,
or whether the patentee instead intends for the claims
and the embodiments in the specification to be
strictly coextensive. The manner in which the patentee
uses a term within the specification and claims
usually will make the distinction apparent.

Id. (internal citation omitted).


Prosecution History

    The last form of intrinsic evidence is the history of the

patent's prosecution before the PTO.  "[T]he prosecution history

can often inform the meaning of the claim language by

demonstrating how the inventor understood the invention and

whether the inventor limited the invention in the course of

prosecution, making the claim scope narrower than it would

otherwise be."  Id. at 1317.  This doctrine of claim disclaimer

prevents patentees from "recapturing through claim

interpretation specific meanings disclaimed during prosecution."

Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed.

Cir. 2003).  The doctrine does not apply, however, unless the

alleged disavowal of claim scope would be unambiguous to one of

ordinary skill in the art.  Id. at 1324.  In other words, "[f]or

a prosecution statement to prevail over the plain language of

the claim, the statement must be clear and unmistakable such

that the public should be entitled to rely on any definitive

statements made during prosecution." <u>Elbex Video, Ltd. v.</u>
<u>Sensormatic Elec. Corp.</u>, 508 F.3d 1366, 1373 (Fed. Cir. 2007)
(internal quotation marks omitted).

## II.  **The disputed terms**

The parties disagree about the meaning of two terms that
appear in claim 6, "interchangeable fan assembly" and "securing
device . . . for joining."  The language of claim 6, with the
disputed terms emphasized, is:

> A cold-air inflatable display, comprising:
> a permeable fabric forming an inflatable figure with a
>     hollow body;
> an <u>interchangeable fan assembly</u> for continuously-
>     blowing air into said hollow body, said fan
>     assembly comprising at least one fan, a housing
>     for said fan, a <u>securing device disposed along a</u>
>     <u>border of said housing for joining</u> said fan
>     assembly to said permeable fabric through a
>     receiving opening positioned on said hollow body
>     above a surface-touching bottom of said hollow
>     body; and
> a lighting arrangement extending through an interior
>     portion of said hollow body, comprising a power
>     cord connected to said fan and at least one
>     lighting element secured to said power cord;
> wherein said <u>interchangeable fan assembly</u> is a
>     lightweight assembly elevated above said surface-
>     touching bottom of said hollow body without a
>     base support and without distorting said figure
>     when said cold-air inflatable display is
>     inflated.

<u>"Interchangeable fan assembly"</u>

First, the parties disagree about how broadly
"interchangeable fan assembly" should be read.  Plaintiff argues
that a fan assembly is "interchangeable" as long as it is

"capable of being removed from one inflatable device and used in place of a fan or fans of another inflatable device." (Pl.'s Proposed Findings of Fact & Conclusions of Law ¶ 66.) The term as construed by plaintiff encompasses any means whatsoever of detaching the fan assembly from one display and attaching it to another.

Since this construction contemplates only a one-way transfer, a fan assembly could qualify as interchangeable even if the only way to remove it from its inflatable display is by rendering that display unusable. For several reasons, a person having ordinary skill in the art would not read the term this way. First, the prefix "inter" denotes reciprocity. An interchangeable fan assembly is a fan assembly that is not only capable of being transferred from one display to another display, which is all that plaintiff's construction requires, but also capable of being transferred back to the first display.

Second, impairing a display in order to accomplish the transfer would not serve the inventor's stated purpose of enabling the use of a single fan assembly with multiple displays. "In construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration." CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1160 (Fed. Cir. 1997).

Third, the construction would encompass the prior art from which the patentee was seeking to distinguish his invention. Even a fan assembly that is permanently affixed to the fabric skin of an inflatable device could, as plaintiff construes the disputed term, be "removed from [that] inflatable device and used in place of a fan or fans of another inflatable device." One would need only to cut out the section of the skin to which the fan assembly is affixed and then attach that section of fabric, with the fan assembly still affixed, to the skin of a second device.  A disputed term should not be read so broadly as to encompass prior art if the patent invokes that term to distinguish the invention as superior.  See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343 (Fed. Cir. 2001); Tronzo v. Biomet, Inc., 156 F.3d 1154, 1159 (Fed. Cir. 1998).  For these reasons, a fan assembly cannot qualify as interchangeable unless it can be transferred without damaging the display.

Defendants propose an additional limitation on the meaning of interchangeable.  They contend that a fan assembly is interchangeable only if it is "designed or intended to be movable between a plurality of available structures without effort or resources beyond those of an unskilled homeowner." (Defs.' Proposed Findings of Fact & Conclusions of Law ¶ 37.) That construction is compelled, defendants argue, by the written

11

description's portrayal of the consumers to whom the invention
is targeted.  In trying to describe why prior fan assemblies'
lack of interchangeability was a problem, the written
description offers the plight of a consumer who purchases "a
jack-o-lantern inflatable display for the Halloween season, a
snowman inflatable display for the holiday season, and an Uncle
Sam inflatable display for Independence Day."  '769 Patent col.1
ll.61-65.  Because "the fan assembly is a significant cost
component of inflatable devices, the lack of interchangeability
between fan assemblies for different displays significantly
increases the cost to purchasers of multiple inflatable
devices."  Id. col.1 l.67-col.2 l.4.  The written description
later identifies the invention's advantage over the prior art as
"reducing cost to purchasers and increasing their ability to
enjoy the benefits of numerous inflatable displays."  Col.2
ll.26-28.  Based on those professed goals, defendants argue that
a fan assembly is not "interchangeable" unless average
homeowners could accomplish the transfer with the minimal tools
and skills that they could reasonably be expected to possess.

Yet even if these statements demonstrate the invention's
intended user, they still do not support the defendants'
proposed limitation.  Nowhere in the '769 patent or its
prosecution history are particular tools or skill sets
mentioned.  Defendants have not cited any case in which a court

12

limited a claim term based solely on the expertise of the target consumer.

Accordingly, I construe the term "interchangeable fan assembly" to mean "a fan assembly that is capable of being moved between inflatable displays without causing damage to those inflatable displays."

"Securing Device . . . for joining"

The parties also disagree about the meaning of the term "securing device . . . for joining." Defendants' proposed construction is "a structure for attaching and detaching two pieces of fabric; one of which is a piece of fabric which is part of the fan assembly and the other a permeable fabric that forms an inflatable figure." (Defs.' Proposed Findings of Fact & Conclusions of Law ¶ 37.) They reach this construction by reading the term as a means-plus-function element under 35 U.S.C. § 112, paragraph 6, which provides:

> An element in a claim for a combination may be
> expressed as a means or step for performing a
> specified function without the recital of structure,
> material, or acts in support thereof, and such claim
> shall be construed to cover the corresponding
> structure, material, or acts described in the
> specification and equivalents thereof.

If a term is determined to be a means-plus-function element, it is construed in two steps: first, identification of the claimed function; second, identification of the

13

corresponding structure in the written description of the patent which performs that function.  <u>Applied Med. Resources Corp. v. U.S. Surgical Corp.</u>, 448 F.3d 1324, 1332 (Fed. Cir. 2006). Defendants contend that the phrase "securing device . . . for joining" claims the functions of securing and joining.  They further contend that the structure that the written description supplies for performing those functions is two pieces of fabric, one a part of the fan assembly and the other the skin of the display, that may be attached or detached via mated male and female components.  Thus, defendants reason, the term should be limited to that structure.[1]

Plaintiff counters that "securing device . . . for joining" is not a means-plus-function element and, therefore, should not be keyed to the particular structures disclosed in the written description.  Plaintiff correctly observes that the word "means" does not appear in the claim, triggering a rebuttable

---

[1] Although defendants argue that the term requires mated male and female components, their proposed construction, "a structure for attaching and detaching two pieces of fabric; one of which is a piece of fabric which is part of the fan assembly and the other a permeable fabric that forms an inflatable figure," does not include any such requirement.  Because not every structure for attaching and detaching pieces of fabric need rely on a mated connection between male and female components (for example, two pieces of fabric could fasten via magnets), defendants' proposed construction is actually broader than what their arguments require.  But since a court should construe a disputed term "only to the extent necessary to resolve the controversy," <u>Vivid Techs.</u>, 200 F.3d at 803, I do not consider a construction any narrower than defendants' proposal.

presumption that § 112, paragraph 6 does not apply. <u>CCS Fitness, Inc. v. Brunswick Corp.</u>, 288 F.3d 1359, 1369 (Fed. Cir. 2002). According to plaintiff, if that statute does not apply, the term ought to be read broadly.  Just how broadly plaintiff does not say, for it has not proposed an alternative to defendants' construction.  Nevertheless, plaintiff indicated during the <u>Markman</u> hearing that the term's scope should extend at least far enough to cover defendants' product.  It argued that the groove in the fan housing around which the cable tie is fastened qualifies as a securing device within the meaning of claim 6.

This argument is premature.  Assessing the similarity between the accused product and the patent claim is a question of fact that can be answered only after the court has construed the claim.  <u>See</u> <u>PPG Indus. v. Guardian Indus. Corp.</u>, 156 F.3d 1351, 1355 (Fed. Cir. 1998).

In any event, there is no need to resolve the question of whether the disputed term is a means-plus-function element. Even if plaintiff is correct that "securing device . . . for joining" is not a means-plus-function element, defendants' construction is still proper based on the intrinsic evidence. The term "securing device" does not appear in the written description's discussion of the interchangeable fan assembly. But wherever the written description depicts the interchangeable

15

fan assembly's fastening to the display's fabric skin, it refers

to a fabric-to-fabric connection.  For example:

> The Summary of the Invention speaks of "affixing the
> fan assembly to a standard-sized piece of fabric that
> is detachable from one display and reattachable to
> another display by joining the male fastening device
> of the standard-sized piece of fabric with the female
> fastening device of the other display."  '769 Patent
> col.2 ll.29-34.

> The Detailed Description of the Invention discloses
> that the fan housing is secured to the standard-sized
> fabric, id. col.3 ll.42-46, and that around the edge
> of that standard-sized fabric is a "male fastening
> device for attaching interchangeable fan assembly
> through a receiving opening to female fastening device
> of inflatable display," id. col.3 ll.59-62 (figure
> references omitted).

> The Detailed Description of the Invention also
> discloses that the transfer of the interchangeable fan
> assembly may be completed by "securing interchangeable
> fan assembly through a receiving opening to inflatable
> display by joining male fastening device to female
> fastening device.  Interchangeable fan assembly is
> secured to a standard-sized piece of permeable fabric
> fitted for attachment to . . . female fastening device
> on inflatable display."  Id. col. 4. ll.8-15 (figure
> references omitted).

> The drawings of the interchangeable fan assembly, with
> the accompanying explanations in the Detailed
> Description of the Invention, uniformly depict male
> and female fasteners that enable fabric to secure to
> fabric.  Id. figs. 1-3, 5.

These references to a fabric-to-fabric connection define

the term, not merely its preferred embodiments.  The uniformity

with which the written description identifies a securing device

that creates a fabric-to-fabric connection between the fan

assembly and the display's skin would lead a person of ordinary

skill in the art to believe that this is the only sort of securing device claimed in the patent.  In numerous cases, the Federal Circuit has relied on such uniformity in restricting a disputed term to the structures disclosed in the written description even though that restriction was not compelled by the claim language alone.  E.g., Edwards Lifesciences LLC v. Cook Inc., 582 F.3d 1322, 1329–30 (Fed. Cir. 2009) (limiting the term "graft" to intraluminal grafts because, among other reasons, the only graft devices described in the specification were intraluminal); id. at 1331 (construing the same term to require wires because "every embodiment described in the specification and shown in the drawings includes wires"); ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1375 (Fed. Cir 2009) (construing the term "spike" to mean a pointed instrument, and rejecting a broader construction that would have included even a non-pointed structure, because the written description "repeatedly and uniformly" described the spike as a pointed structure without ever suggesting "that the spike can be anything other than pointed"); Kinetic Concepts, Inc. v. Blue Sky Med. Group, 554 F.3d 1010, 1019 (Fed. Cir. 2009) (limiting the term "wound" to mean an injury to the skin surface because all examples offered in the written description involve skin wounds).

Plaintiff disputes the premise that the written description envisions an exclusively fabric-to-fabric form of securing device.  It cites to a passage in the Detailed Description of the Invention in which the inventor states: "Male fastening device for attaching interchangeable fan assembly to female fastening device is illustrated in the preferred embodiment to comprise a zipper system, but other means of attachment such as fasteners, buttons, hook and loop fastening tape, or the like can be used." '769 Patent, col.3 ll.62-67 (emphasis added). Plaintiff reasons that the suggestion of using "fasteners," which could connote any conceivable mechanism for attachment, indicates that the securing device claimed in the patent encompasses all attachment mechanisms.  Yet the inclusion of the ostensible catch-all "fasteners" in a list otherwise composed of fabric-to-fabric attachment mechanisms does not expand the universe of devices claimed as the invention.  If fasteners had as expansive a connotation as plaintiff ascribes to it, then the passage's presentation of fasteners as an alternative to zippers or buttons would be unnecessary — "fasteners" alone would be broad enough to cover all embodiments.

Further support for defendants' proposed construction is found in the written description's explicit identification of a fabric-to-fabric connection as a part of "the invention," rather than part of an embodiment.  The Summary of the Invention states

18

that "[t]he invention also includes an interchangeable fan
assembly," and immediately identifies that interchangeable fan
assembly as one affixed to a piece of fabric that attaches to
the display's skin via a male-to-female fastening
device . . . ." Id. col.2 l.26.  It is well established that
when a patent describes a particular feature using language such
as "the invention" or "the present invention," the description
limits the scope of the invention.  E.g., Trading Techs. Int'l,
Inc. v. eSpeed, Inc., 595 F.3d 1340 (Fed. Cir. 2010);
Decisioning.com, Inc. v. Federated Department Stores, Inc., 527
F.3d 1300, 1309–11 (Fed. Cir. 2008); Tivo, Inc. v. Echostar
Commc'n Corp., 516 F.3d 1290, 1300 (Fed. Cir. 2008); Honeywell
Int'l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir.
2006).

    Plaintiff contends that the doctrine of claim
differentiation counsels against defendants' proposed
construction.  Under that doctrine, "[w]hen different words or
phrases are used in separate claims, a difference in meaning is
presumed." Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1143 (Fed.
Cir. 2005).  Plaintiff first points to independent claim 1,
which claims in relevant part:

    an interchangeable fan assembly for continuously-
    blowing air into said hollow body, said fan assembly
    comprising at least one fan, a housing for said fan
    secured to a piece of fabric having a male securing
    device disposed along a border of said standard-sized

<u>fabric for receipt by a female securing device</u>
disposed along a border of a receiving opening joining
said fan assembly to said permeable fabric through
said receiving opening positioned on said hollow body
above a surface-touching bottom to allow optimum
airflow through said fan into said hollow body . . . .

'769 Patent col.4 ll.31-41 (emphasis added).  According to

plaintiff, the presence of the fabric-to-fabric limitation

in independent claim 1 precludes a construction of

independent claim 6 that involves the same limitation.

But claim differentiation "is not a rigid rule but rather

is one of several claim construction tools."  <u>ICU Med.</u>, 558 F.3d

at 1376.  "Different terms or phrases in separate claims may be

construed to cover the same subject matter where the written

description and prosecution history indicate that such a reading

of the terms or phrases is proper."  <u>Nystrom</u>, 424 F.3d at 1143.

Thus, in <u>ICU Medical</u>, the court relied on the written

description to construe the term "spike" as requiring a pointed

tip, even though claim differentiation counseled otherwise.  558

F.3d at 1376.  And in <u>Nystrom</u>, the court relied on the written

description and prosecution history to construe the term "board"

to mean a "piece of elongated construction material made from

wood cut from a log," even though claim differentiation

suggested that the term should not be limited to wood cut from a

log.  424 F.3d at 1142-43.  Such overlapping constructions are

particularly common where, as here, the claims at issue are all

20

independent.  See Curtiss-Wright Flow Control Corp. v. Velan,
Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006) (quoting Hormone
Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 1567
n.15 (Fed. Cir. 1990)) ("It is not unusual that separate claims
may define the invention using different terminology, especially
where . . . independent claims are involved."). Because the
written description indicates that a structure connecting two
pieces of fabric was the only sort of securing device
contemplated for the invention, the doctrine of claim
differentiation does not apply as between independent claims 1
and 6.

     Plaintiff also argues that claim 6 should be differentiated
from dependent claim 10, which recites the additional element of
"a zipper system having a male securing zipper and female
securing zipper for joining said fan assembly to said permeable
fabric." '769 Patent, col.5 ll.30-33.  This proposition is
correct so far as it goes.  Yet it simply precludes a
construction of the securing device in claim 6 as limited to a
zipper system.  It does not, by contrast, preclude a
construction of the securing device in claim 6 as encompassing
any device that fastens fabric to fabric.

     The prosecution history, the final piece of intrinsic
evidence that I must consider, is ambiguous.  In an Office
Action dated December 1, 2006, the patent examiner rejected the

claims of the application that eventually issued as the '769 patent.  The examiner's basis for the rejection was a finding of obviousness under 35 U.S.C. § 103(a) in light of the prior art. On February 28, 2007, the inventor submitted a response ("Response") in which he argued that the prior art "fail[s] to teach, disclose or suggest the elements recited in amended Claim 1, or any of the similar independent Claims 7 [which issued as claim 6] and 13, or the claims which depend therefrom." Response at 7.  The inventor summarized the patentable distinction from the prior art as:

> a fan assembly having at least the following: (1) "a housing for said fan secured to a standard-sized fabric having a male securing device disposed along a border of said standard-sized fabric for receipt by a female securing device disposed along a border of a receiving opening joining said fan assembly to said permeable fabric through said receiving opening positioned on said hollow body above a surface-touching bottom" and (2) "a lightweight assembly secured to said permeable fabric above said surface-touching bottom of each hollow body without a base support and without distorting said figure when said cold-air inflatable display is inflated."

Id. Essentially identical language appears again toward the end of the inventor's remarks.  Id. at 9.

Defendants contend that the first section of this passage, which describes a securing device for attaching fabric to fabric, constitutes a disclaimer of all securing devices that do not attach fabric to fabric.  See Phillips, 415 F.3d at 1317. Plaintiff disagrees.  According to plaintiff, the inventor's

response asserted two separate, alternative points of
distinction over the prior art: a fabric-to-fabric securing
device and a lightweight assembly secured above the surface-
touching bottom of the display.  Plaintiff maintains that only
the latter asserted distinction was meant to refer to claim 6
(at that time numbered as claim 7).  The former, on the other
hand, was meant to refer exclusively to those claims whose terms
are expressly limited to securing devices that attach fabric to
fabric.  That is, plaintiff reads the inventor's response as
asserting the lightweight assembly secured above the surface-
touching bottom — but not the fabric-to-fabric securing device —
as the distinction that achieves the patentability of what
issued as claim 6 of the '769 patent.

    "[B]ecause the prosecution history represents an ongoing
negotiation between the PTO and the applicant, rather than the
final product of that negotiation, it often lacks the clarity of
the specification and thus is less useful for claim construction
purposes." Id.  That is the case here.  The inventor's remarks
are at least ambiguous enough to fall short of the clear and
unmistakable disavowal required for prosecution disclaimer. See
Elbex Video, 508 F.3d at 1371–72.  Nevertheless, although the
prosecution history does not narrow the claim, neither does it
broaden the claim.  The construction of the term thus relies on
the rest of the intrinsic evidence, which favors defendants'

proposed construction. See Netcraft Corp. v. eBay, Inc., 549 F.3d 1394, 1401 (Fed. Cir. 2008) (construing disputed claim term based on other sources of intrinsic evidence where the prosecution history cited by the parties was not helpful to either party's claim construction position).

Accordingly, I construe the term to mean "a structure for attaching and detaching two pieces of fabric, in which one piece of fabric is part of the fan assembly and the other is a permeable fabric that forms an inflatable figure."

### CONCLUSION

For the foregoing reasons, the disputed terms are properly construed as explained above.

SO ORDERED.

Dated:      New York, New York
            September 28, 2011

                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge